CLARK (THOMAS v.). See Case No. 13,894.

## Case No. 2,837.

### CLARK v. UNITED STATES.

[2 Wash. C. C. 519.][1]

Circuit Court, D. Pennsylvania. April Term, 1811.

SEIZURE FOR VIOLATION OF NON-INTERCOURSE ACT—ADMIRALTY JURISDICTION—TRIAL BY JURY —CONFESSION AS EVIDENCE.

1. The Sea Nymph and her cargo, were seized for a violation of the non-importation laws, in importing the goods seized into the port of Philadelphia. The vessel and part of her cargo were seized in the river Delaware, and part of the cargo after it had been landed.

2. The ninth section of the judiciary act of the 24th of September, 1789 [1 Stat. 76], assigns to the district courts jurisdiction of all cases, purely of admiralty maritime jurisdiction, if they arise under the laws of impost, navigation, and trade; where the seizure is made in waters navigable for vessels of ten tons burthen from sea. In all other cases, where the seizure is on land, or waters of less depth, the jurisdiction is on the common law side of the court.

3. An information in rem against the thing itself, in a case of admiralty and maritime jurisdiction, is not a suit at common law, but an admiralty proceeding, and does not require a trial by a jury.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

4. Informations in rem, on the admiralty side of the district courts, for forfeitures incurred under the laws of impost, have been sanctioned by the supreme court of the United States.

5. If a party, charged with a forfeiture under the laws of the United States, shall, in his answer, on oath, to the information, furnish evidence against himself, the court, in an action of debt brought against him for a penalty under the same law, would reject his confessions, if offered in evidence.

Appeal from a sentence of the district court [for the district of Pennsylvania, unreported], condemning the Sea Nymph and her cargo, for a violation of the non-importation law (volume 9 Laws, p. 243.) The ground of forfeiture is, that the goods in question were imported in this vessel into the port of Philadelphia, from Port-au-Prince, a possession of France, contrary to law. The Sea Nymph and part of her cargo were seized at the port of Philadelphia, on the river Delaware, and part on land; and the question made in the district court, and insisted upon in this, is, whether the trial of the vessel and cargo, wherever seized, ought to have been by jury.

WASHINGTON, Circuit Justice. It has been contended for the appellant, that this is not, upon general ground, a case of admiralty and maritime jurisdiction, nor is it assigned to that jurisdiction by the judicial law; and if it be so assigned, still, the act under which the forfeiture was incurred, prescribes a common law remedy for enforcing it. The two first grounds of objection to the mode of trial in the district court, will be considered together; the last will require a distinct examination.

The ninth section of the judicial law, gives to the district court cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures on waters navigable from the sea, by vessels of ten or more tons burthen, as well as upon the high seas, under the laws of impost, navigation, and trade. This section, we consider as assigning to the district court all cases, purely of admiralty and maritime jurisdiction, as well as cases not properly belonging to that jurisdiction, according to the decisions of common law courts of England, if arising under laws of impost, navigation, and trade, where the seizure is made on waters of a certain depth, from the sea, and all other cases of the latter description, that is, cases not strictly of admiralty jurisdiction, where the seizure is on land, or on waters of a less depth than are above, to the common law side of the same court. If cases of seizure, under laws of impost, &c., were necessarily and indisputably cases of admiralty jurisdiction, strictly speaking, then it would seem to have been unnecessary to class them with admiralty cases, because they would, without such a provision, arrange themselves with those cases, and be triable in the same mode, and before the same tribunal. Cases

may arise under a law of impost, &c., which are purely of admiralty jurisdiction, where the whole transaction is at sea, or on waters out of the body of a county; and there may be others not proper for the admiralty, which would not belong to that jurisdiction, and which, therefore, are intended by this law to be assigned to that jurisdiction. In the former case, we conceive it to be unimportant where the seizure is made, whether on land, or on waters of a depth less than a vessel of ten tons could navigate; in the latter case, the jurisdiction, according to this law, must be decided by the place where the seizure is made. In this way only, can the dictum of the supreme court of the United States, in the case of The Betsey, be reconciled with former decisions, and with established principles of law; for surely the court never intended to say, that the jurisdiction of the admiralty, in a case of strict admiralty jurisdiction, would depend upon the place where the seizure was made. There was nothing in that case to call for such a decision.

The case of U. S. v. La Vengeance [3 Dall. (3 U. S.) 297] is the leading one on this subject, and is referred to in the case of The Betsey [4 Cranch (8 U. S.) 442] as governing that; and the decision in the former case, appears to us conclusive as to that now under consideration. It was an information in rem, in the district court, for exporting from the United States to a foreign country, arms and ammunition, contrary to law. It was contended, upon the broad ground of the admiralty jurisdiction, that it was not a case belonging to that jurisdiction, because it did not arise wholly upon the sea; exportation being an act arising partly on land, and partly on the sea. The operation of the ninth section of the Judicial Law, which assigns to the admiralty, cases of seizure under laws of impost, &c., was not hinted at in the argument, and the court decided that it was a case of admiralty and maritime jurisdiction, because exportation is entirely a water transaction. If that was a case of admiralty jurisdiction, because it was a water transaction, is not this, too, a water transaction? What is the offence created by the non-intercourse law? It is the importation of goods into the United States, from French or English possessions. But to complete the offence, it is not necessary that the goods should be landed, if they are brought from those countries with intention to be landed. For we find that even the putting of goods on board of a vessel, with intention to import the same into the United States, is an offence against the law, and subjects the vessel and goods to forfeiture; and, consequently, they may be seized before the vessel has arrived at her port of destination, or even before she has entered the river. This, then, is a stronger case of admiralty jurisdiction, than that of the Vengeance. Even in the case of The Sally [2 Cranch (6 U. S.) 406], where the seizure was at Nottingham,

within the body of a county, the court considered the question of jurisdiction settled by the case of the Vengeance, and thereby pronounced it to be a case of admiralty jurisdiction. If, then, this be a case of admiralty jurisdiction, because wholly a water transaction, it can hardly be contended, that the offender, by landing the cargo, can oust the jurisdiction of the court, and convert a maritime into a common law cause. The rule is clear, that if the original cause arise at sea, and other matters happen on land, depending thereon, as if a thing be taken at sea, and afterwards brought to land, the admiralty retains its jurisdiction over the subject. See 2 Bac. Abr. 178. So, too, if the cause of forfeiture arise at sea, the bringing of the thing forfeited to land, will not oust the admiralty of its jurisdiction.

This brings us to the consideration of the third point, which is, that the eighteenth section of the law, under which this forfeiture is claimed, has prescribed a common law mode of recovery; and, consequently, that the trial must be conformable to that practised in the courts of common law. If the premises be correct, the conclusion must be granted. The recovery is to be by action of debt, by indictment, or information. It is admitted, that the two first of these remedies are inapplicable to cases where the thing forfeited is demanded, although they are quite proper for the recovery of the penalties, or for enforcing personal punishment. The question then is, whether a trial by jury is indispensable, where the proceeding is by information against the thing itself? Because, if the object be to punish the offender in his person or property, generally, it is not questioned but that the trial of an information must be by jury. What is there in the constitution or laws of the United States, which requires the trial to be by jury, in the case of an information in rem, on the admiralty side of the district court? The former preserves that mode of trial in suits at common law. But an information in rem, in a case of admiralty jurisdiction, is not a suit at common law, but an admiralty proceeding, where the trial never is by jury. As to the latter, the saving clause in the ninth section of the judicial law, obviously means, that in cases where the jurisdiction of the admiralty is not exclusive, a party may, at his election pursue his common law remedy, if the common law be competent to afford him redress. It has no allusion to the mode of trial, in any case; for that would, without any provision of law, adapt itself to the remedy to which alone the saving refers. But what places this subject beyond all doubt, is, that informations in rem, on the admiralty side of the district court, for forfeitures incurred under laws of impost, navigation, and trade, of the United States, have been common in the practice of our courts as an admiralty proceeding, as much so as the proceeding by libel. The correctness of this practice has been brought di-

rectly into the view, and received the sanction of the supreme court of the United States, in the case of The Vengeance, when it was decided that the information in rem, is in the nature of a libel, and to be tried, according to the course of the admiralty, without jury. The mode of trial is here settled by the highest tribunal in the United States, and the term information, in respect to admiralty proceedings, had received a precise meaning, before it was used by congress. We think we are warranted in presuming, or are rather bound to conclude, that this decision was known to the legislature, and that the term was used in this law, in reference to the practice of the courts thus solemnly recognised... If, then, the information in rem in a civil suit of admiralty and maritime jurisdiction, be of the nature of a libel, we are compelled to say that the use of the expression in this law, does not vary this case from those of The Vengeance, The Sally, and The Betsey [supra].

Another objection made to the mode of trial in this case, is, that the defendant may be compelled to give evidence against himself, contrary to a well-established principle of law, which excuses a man from answering, upon oath, any thing which may subject himself to a forfeiture. If forfeiture of the thing, which forms the subject of the suit, be meant, that point is settled by the decisions which have been mentioned; and if, in an action of debt, or an indictment for the penalty, the confession should be offered in evidence against the defendant, and he is entitled to the benefit of the rule which is contended for, the court would, of course, reject the evidence for that reason; and in this way the difficulty would be got rid of.

Upon the whole, we are of opinion that, as to the mode of trial, there is no error in the sentence of the district court.

Cases cited by the appellant: Fitzg. 66; Cro. Jac. 643; 1 Show. 118; 4 Bl. Comm. 304, 305; 6 Mod. 143; 7 Mod. 99; 3 Bac. Abr. 635, 636; [U. S. v. The Betsey] 4 Cranch [8 U. S.] 446, 452; 3 Atk. 276; 2 Ves. 245, 456; 3 Bl. Comm. 262; 4 Bl. Comm. 308; 2 C. Rob. Adm. 245; [U. S. v. The Sally] 2 Cranch [6 U. S.] 406; 1 C. Rob. Adm. 271.

Cases by appellee: 6 C. Rob. Adm. 341, 347; Priestman's Case, 4 Dall. [4 U. S.] 28; [U. S. v. The Union] 4 Cranch [8 U. S.] 216; [Peisch v. Ware] Id. 347; [U. S. v. La Vengeance] 3 Dall. [3 U. S.] 297; [Murray v. The Charming Betsey] 2 Cranch [6 U. S.] 64; [Hallet v. Jenks] 3 Cranch [7 U. S.] 217; [Maley v. Shattuck] Id. 459; 3 Bl. Comm. 68, 106; 1 Wood. El. Jur. 137, 138; 2 Browne, Civ. Law, 123, 124; Doug. 615; Yel. 135; Burrows, 74; [James' Claim] 1 Dall. [1 U. S.] 48; Reeve, Shipp. 255; Peake, 8, 9; 4 Bl. Comm. 281; [Keane v. The Gloucester] 2 Dall. [2 U. S.] 37; [Henderson v. Clarkson] Id. 175.